FILED
U.S. District Court
District of Kansas

01/23/2026

Clerk, U.S. District Court
By:_SND_ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JESSE JOSEPH AICH,**

     **Plaintiff,**

     v.                          **CASE NO.  25-3235-JWL**

**RENO COUNTY CORRECTIONAL
FACILITY, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is in custody at the Reno County Correctional Facility in Hutchinson, Kansas ("RCCF").   On November 19, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") ordering Plaintiff to show good cause why his claims should not be dismissed for the reasons set forth in the MOSC and granting him the opportunity to file an amended complaint to cure the deficiencies.   This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 6).  The Court's screening standards are set forth in the MOSC.

### I.  Nature of the Matter Before the Court

Plaintiff uses the Court-approved form for his Amended Complaint, but merely references attached pages for the Nature of the Case and Count I.  *See* Doc. 6, at  2–3.  Plaintiff's request for relief states that he wants his "right to freedom of speech and damages in the amount associated with costs as well as [his] time and trial by jury."  *Id*. at 5.

In the attached pages, Plaintiff claims that his First Amendment right to free speech is being violated, and he wants to be able to text his family.  *Id*. at 6–7.  Plaintiff alleges that the RCCF allowed Turnkey to put kiosks in the jail and pre-approves every decision that Turnkey makes

1

"*from an item sold on canteen etc.*" *Id*. at 7. Plaintiff alleges that no person is involved in monitoring his texts and it is done by software that he claims "obviously" has been approved by Turnkey and the RCCF. *Id*. He claims there is no doubt a person behind the software, but he does not know who it is. *Id*. He claims the software is designed to deprive him of his constitutional right to freedom of speech. *Id*. at 8.

Plaintiff then appears to indicate what was included in his two rejected text messages. He states:

> Just to be transparent with you as I am I've got nothing to hide from anybody. So what I go out so what I don't sleep so what I consume or even distribute drugs. I'm just having fun and I don't care who sees. My aunt said that her daughter my cousin was going to a festival in Kansas City so I asked how my cousins children were and attempted to tell her she would've loved it as I actually lived in the Coachella Valley which hosts one of the if not biggest festivals in the U.S. It wouldn't let me send due to forbidden content. Nothing "terroristic." Then I attempted to send a couple people texts about the war. Specifically the nazi's enabling act in 1933 and how it pertained to Bushes Patriot Act. I didn't have the character composity to relay the New Deal was also in 1933 or Bushes family connection to the nazis. Just a general factual statement not pro nor con just the facts. Its allowed similar texts. But this also denied due to forbidden content. Which I really don't care I just wanna be able to text my family and be allowed my first and 14th right to free speech.

*Id*. 8–9 (errors in original).

## II. DISCUSSION

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 408, 418 (1974), *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)); *see also Gee v. Pacheco,* 627 F.3d 1178, 1188 (10th Cir. 2010) ("The Supreme Court has

recognized that '[a]ccess is essential . . . to families and friends of prisoners who seek to sustain relationships with them.' ") (quoting *Thornburgh*, 490 U.S. at 407).

These constitutional rights may, however, be subject to limitations when those limitations relate to legitimate penological interests unrelated to the suppression of expression. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees"). The United States Supreme Court:

> also has recognized, however, that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." [*Turner v. Safley*, 482 U.S. 78, 84 (1987)] (internal quotation marks omitted). Accordingly, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 [ ] (1989). In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S. Ct. 2254.

*Gee*, 627 F.3d at 1187.

Courts employ the four-factor test developed by the Supreme Court in *Turner v. Safley* to determine whether a regulation is reasonably related to a legitimate penological interest. That test asks:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 750 (10th Cir. 2019) (quoting *Al-Owhali v.*

*Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012)). "Although this standard is not toothless, courts generally give prison officials considerable deference." *Hum. Rts. Def. Ctr. v. Johnson Cnty.*, 507 F. Supp. 3d 1277, 1284 (D. Kan. 2020) (citations omitted). "Ultimately, the burden is on the party challenging the regulation to prove it is unconstitutional, and not on prison officials to prove it is constitutional." *Id.* (citing *Wirsching v. Colorado*, 360 F.3d 1191, 1200 (10th Cir. 2004)).

The Court noted in the MOSC that Plaintiff provided no information as to what his messages said, other than that he was inquiring as to his family's well-being and about the history of the war. Plaintiff's Amended Complaint has provided some indication of what was in his text messages. He references using and distributing drugs and war. These appear to be the only two text messages that were rejected due to their content. Giving considerable deference to jail officials, any policy rejecting texts describing the use and distribution of drugs and war would appear to be reasonably related to a legitimate penological interest.

Courts also consider whether alternative means of exercising the right are available. Plaintiff has not alleged that he has no alternative means to exercise his freedom of speech rights. In his original Complaint, Plaintiff alleged that while his personal messages are censored in violation of his First Amendment right to freedom of speech, he "can say whatever [he] want[s] on the phone or on a visit or in staff messages." (Doc. 1, at 2.) Plaintiff has not indicated that he is unable to communicate with his family by phone, in person, or through the mail.

Other courts have held that prisoners do not have a constitutional right to a particular form of communication. *See Shrader v. Arviza*, 2023 WL 5436083, at *1 (E.D. Cal. 2023) ("[P]risoners do not have a right to unlimited email or other electronic communications. Rather prison officials may limit a prisoner's access to email so long as there are other forms of speech available.") (citing *Glick v. Montana Dept. of Corr.*, 2009 WL 2959730, at *2 (D. Mont. May 7, 2009); *see also*

*Lumbumba v. Blevins*, 2022 WL 463105, at *3-4 (W.D. Va. Feb. 15, 2022) ("Courts have held . . . that inmates *do not* have an identical constitutional right to receive or send electronic messages, better known as emails[,]" and "[w]hen a prison system permits inmates to utilize multiple means of outside communications, prison authorities may lawfully impose reasonable time, place, and manner restrictions on the use of one or more of those communications without infringing on inmates' First Amendment rights to free speech.") (citing *Dunlea v. Fed. Bureau of Prisons*, 2010 WL 1727838, at *2 (D. Conn. Apr. 26, 2010) *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2d Cir. 2010); *Pell v. Procunier*, 417 (U.S. 817-28 (1974) (emphasis in original) (other citation omitted))); *see also Cousins v. Scott*, 2025 WL 2231047, at *4 (M.D. Tenn. Aug. 5, 2025) (quoting *Mims v. Macauley*, No. 1:24-CV-1289, 2025 WL 466602, at *9 (W.D. Mich. Feb. 12, 2025)) ("[A] restriction on one type of mail that a prisoner may receive (i.e., electronic mail) does not prevent a prisoner from receiving other mail (i.e., physical mail), and therefore, the prisoner retains his First Amendment right to send and receive mail[.]")).

In *Mitchell v. Annucci*, the court addressed plaintiff's claim that the policies prohibiting inmates from accessing email and text messaging services violated the First Amendment. *Mitchell v. Annucci*, 2020 WL 7029136, at *6 (N.D.N.Y. 2020), *Report and Recommendation adopted by* 2020 WL 6375468 (N.D.N.Y. 2020). The court held that:

> Consistent with cases decided around the country, the Court recommends that summary judgment be granted as to this claim. "Although prison inmates retain a right under the First Amendment to send and receive information while incarcerated they do not have a constitutional right to a particular form of communication, including access to the internet or email." *Edwards v. New York State Dep't of Corr. & Cmty. Supervision*, 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations omitted) (citing cases); *see also Holt v. Bright*, 2020 WL 224575, at *3 (N.D. Ohio Jan. 15, 2020) ("while prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as

> access to email"); *Smith v. Unknown Hall*, 2018 WL 1602633, at *4 (W.D. Mich. Apr. 3, 2018) (noting that courts "have routinely agreed" that inmates "do not have a constitutional right to a particular form of communication, such as access to email.") (citing cases). Prison officials, therefore, do not violate the First Amendment by declining to make an inmate's preferred method of communication available.

*Id.*

Courts have addressed similar issues regarding a federal inmates' use of TRULINCS electronic messaging. *See, e.g., Teauge v. True*, 2018 WL 4335668, at *2 (S.D. Ill. 2018). The court in *Teague* stated that:

> TRULINCS is a computer system that allows federal inmates to send and receive electronic mail. (*See* PS 4500.11 at 14.1). All activity on the system is monitored and recorded to ensure the safety and security of the correctional facility and the protection of the public. *Id.*
>
> An inmate's access to TRULINCS is a privilege, not an entitlement. (*See* PS 4500.11 at 14.2). Prison wardens have absolute discretion to deny, discontinue, or limit any inmates' use of the system for safety and security reasons. *Id.*
>
> * * * *
>
> Plaintiff has no constitutional right to access TRULINCS to send or receive emails. *See, e.g., Monk v. Dawn*, No. 18-cv-01318-JPG, 2018 WL 3587713, at *2 (S.D. Ill. July 26, 2018) (noting that "[n]ot every denial of a 'privilege' (such as access to TRULINCS) amounts to a constitutional violation). Courts considering such claims have summarily rejected them. *See Sebolt v. Samuels*, —— F.3d ——, 2018 WL 4232075 (7th Cir. Sept. 6, 2018); *Stratton v. Speanek*, No. 14-CV-120-HRW, 2014 WL 6705394, at *3 (E.D. Ky. Nov. 26, 2014) (citing cases) (use of the TRULINCS system is an institutional privilege and not a constitutionally protected right); *Edington v. Warden of FCI Elkton*, No. 4:14CV2397, 2015 WL 1843240, at *4 (N.D. Ohio Apr. 22, 2015) (dismissing *Bivens* claim at screening based on denial of access to TRULINCS). *See also Gatch v. Walton*, No. 13-cv-1168-MJR, 2013 WL 6405831, at *3 n. 4 (S.D. Ill. 2013) (collecting cases).

> Although prisoners have a right to send and receive mail, *Rowe v.
> Shake*, 196 F.3d 778, 782 (7th Cir. 1999), their use of other forms
> of communication is not guaranteed. *See, e.g., Gatch*, 2013 WL
> 6405831, at \*2. For example, reasonable restrictions on an
> incarcerated person's phone use have withstood constitutional
> scrutiny. *See id.* (collecting cases) (inmates have no right to
> unlimited telephone use). Restrictions on an inmate's ability to
> receive visitors have also been upheld as rationally related to
> legitimate penological interests. *Overton v. Bazzetta*, 539 U.S. 126,
> 131, 123 S. Ct. 2162, 156 L.Ed.2d 162 (2003).

*Id*. at \*2–3. The court in *Teague* dismissed the plaintiff's First Amendment claim for failure to state a claim, and noted that plaintiff "has other means of communication available to him (*e.g.*, mail, phone, and visits), and he complains of no denial of access to these alternative forms of communication." *Id*. at \*3.

Plaintiff has failed to allege that he lacks other means of communicating with his family. Although text messaging may be more convenient, Plaintiff does not have a constitutional right to a particular form of communication. *See Glick v. Montana Dep't of Corr.*, 2009 WL 2959730, at \*2 (D. Mont. 2009) (rejecting argument that because computer access is now the norm it deserves the same protections as other forms of expression, and finding that "[w]hile Glick may be inconvenienced by the lack of computer access, inconvenience does not amount to a constitutional violation . . . Glick has numerous other means for expression and speech . . ."). Plaintiff has failed to show a constitutional violation.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated January 23, 2026, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**